**IN THE UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF GEORGIA**
**AUGUSTA DIVISION**

| | | |
|---|---|---|
| KATHRYN WILLIAMS,<br><br>Plaintiff,<br><br>v.<br><br>DOCTORS HOSPITAL OF AUGUSTA, LLC,<br><br>Defendant. | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* | CV 124-237 |

**O R D E R**

Before the Court is Defendant's motion for summary judgment. (Doc. 25.) For the following reasons, Defendant's motion for summary judgment is **GRANTED**.

## I. BACKGROUND

Plaintiff, an African-American female, was employed by Defendant as a Registered Nurse from December 13, 2021, to March 8, 2024. (Doc. 25-5, at 2, 6; Doc. 28-1, at 1.) Plaintiff worked in the Intensive Care Unit ("ICU") for her entire employment. (Doc. 25-5, at 2; Doc. 28-1, at 1.) Plaintiff was an experienced nurse with good clinical skills. (Doc. 25-5, at 2.) Defendant asserts that during her employment, Plaintiff received coaching from management three times regarding her unprofessional behavior, sarcastic attitude, and aggressive posture toward a patient. (Doc.

25-5, at 3; Doc. 28-2, at 2.) Plaintiff states "she does not recall being coached for sarcasm or mocking leadership," and the coaching she received for the patient interaction "was unfair." (Doc. 28-2, at 2.) Plaintiff also received a verbal warning for violating Defendant's attendance policy. (Doc. 25-5, at 2, Doc. 26-1, at 119.)

On or about November 15, 2023, Jason Stallings, Plaintiff's nurse manager, told her she should not leave the unit for lunch at the same time as two other nurses because he did not want three experienced nurses to leave the unit simultaneously while the ICU had several recent nursing graduates working. (Id. at 2-4; Doc. 28-2, at 2, 4.) Plaintiff disputes Stallings' reasoning and states Stallings simply said, "you just can't go," when she asked why she could not attend lunch with the two nurses. (Doc. 28-2, at 4.) Plaintiff and the two other nurses are African-American. (Doc. 25-5, at 3; Doc. 28-1, at 2.) One of the nurses, Sherry Griffin-Milton, is considered part of management. (Doc. 25-5, at 3.) Plaintiff believed the real reason Stallings did not allow her to go to lunch with the other nurses was because of her race. (Id. at 4.) Afterward, Plaintiff complained to her manager, Ashton Crocker, and expressed her concern that the lunch restriction was racially motivated. (Id.; Doc. 28-1, at 2-3.) Crocker informed Plaintiff that going to lunch with Griffin-Milton was problematic due to the nature of her management position, and staff had raised

concerns about potential favoritism. (Doc. 25-5, at 4; Doc. 28-2, at 5.) In November 2023, Plaintiff raised a racial discrimination complaint with Human Resources ("HR") Representative Jennifer Ansley regarding the lunch instruction. (Doc. 28-1, at 3; Doc. 34, at 2.) On December 15, 2023, Plaintiff met with Ansley, Stallings, and Crocker to discuss her behavior and complaints of racial discrimination. (Doc. 25-5, at 4; Doc. 28-2, at 6.) Plaintiff acknowledged the meeting was productive, "great," and "what needed to happen." (Doc. 25-5, at 5; Doc. 28-2, at 7.) The Parties dispute whether Plaintiff reiterated her November 2023 HR complaint in February 2024. (Doc. 28-1, at 3; Doc. 34, at 2.)

On March 1, 2024, Plaintiff used profane language and raised her middle finger toward Justin Garnell, who was the Charge Nurse on shift. (Doc. 28-1, at 3; Doc. 25-5, at 5.) During this incident, Plaintiff said, "I don't care, I don't give a fuck, write me up." (Doc. 28-2, at 7; Doc. 25-5, at 6.) On March 5, 2024, Plaintiff was suspended pending investigation, and she was terminated on March 8, 2024. (Doc. 25-5, at 6; Doc. 28-2, at 7-8.) Defendant states the termination decision was made by Stallings and Crocker, who considered giving Plaintiff a final written warning, but ultimately decided to terminate. (Doc. 25-5, at 6.) Plaintiff refused to sign the form given to her by management, which described the reasons for her termination. (Id.;

Doc. 28-2, at 8.) Instead, Plaintiff wrote on the form, "[Crocker] is racially targeting terminated employee. All actions displayed are decided through racial discrimination." (Doc. 25-5, at 6; Doc. 28-2, at 8.) When asked if she wanted to comment about the incident, Plaintiff did not apologize. (Doc. 25-5, at 7.) Plaintiff believes her termination stemmed from her complaint about Mr. Stalling's lunch directive and, in part, was racially motivated. (Id.; Doc. 28-2, at 9.)

According to Defendant's Equal Employment Opportunity Policy (the "Policy"), "acts of rude and discourteous conduct . . . the use of profane or obscene language in a demeaning or offensive way . . . or similar acts" are banned. (Doc. 25-5, at 1; Doc. 28-2, at 1.) Additionally, Defendant may terminate an employee for "repeated misconduct or for a single serious offense, including insubordination, gross misconduct, harassment, or acts or threats of violence." (Doc. 25-5, at 1 (quotations omitted); Doc. 28-2, at 1.) Furthermore, Defendant's handbook warns that "[s]erious or repeated breaches of performance, conduct or attendance standards are not tolerated" and there is no tolerance of "incivility, bullying, violence, retaliation, or intimidation." (Doc. 25-5, at 1-2; Doc. 28-2, at 1.)

On March 19, 2024, Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Doc. 1, at 2.) On December 18, 2024, Plaintiff filed

a complaint for racial discrimination and retaliation alleging claims under Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981 ("Section 1981"). (Id. at 1, 6-14.) On December 17, 2025, Defendant moved for summary judgment. (Doc. 25.) Plaintiff responded and Defendant replied. (Docs. 28, 35.) The motion is now ripe for the Court's review.

## II. LEGAL STANDARD

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Facts are "material" if they could "affect the outcome of the suit under the governing [substantive] law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and a dispute is genuine "if the non[-]moving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." Waddell v. Valley Forge Dental Assocs., Inc., 276 F.3d 1275, 1279 (11th Cir. 2001) (citation omitted). The Court must view factual disputes in the light most favorable to the non-moving party and must "draw all justifiable inferences in [the non-moving party's] favor." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (citation, internal quotation marks, and internal punctuation omitted). The Court should not weigh the evidence or determine credibility. Anderson, 477 U.S. at 255.

The moving party has the initial burden of showing the Court, by reference to materials in the record, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the non-movant bears the burden of proof at trial, the movant has two options as to how it can carry its initial burden. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-16 (11th Cir. 1993). The movant may show an absence of evidence to support the nonmovant's case or provide affirmative evidence demonstrating the nonmovant's inability to prove its case at trial. Id.

If the movant carries its initial burden, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." Vaughn v. Ret. Sys. Of Ala. 856 F. App'x 787, 789 (11th Cir. 2021) (citation omitted). The nonmovant must tailor its response to the method by which the movant carries its initial burden. Fitzpatrick, 2 F.3d at 1116-17. For example, if the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Id. at 1116. On the other hand, if the movant shows a lack of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id.

at 1116-17 (citations omitted). The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

"Parties may not, by the simple expedient of dumping a mass of evidentiary material into the record, shift to the Court the burden of identifying evidence supporting their respective positions." Preis v. Lexington Ins., 508 F. Supp. 2d 1061, 1068 (S.D. Ala. 2007). Essentially, the Court has no duty "to distill every potential argument that could be made based upon the materials before it on summary judgment." Id. (citing Resol. Tr. Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995)). Accordingly, the Court will only review the materials the Parties specifically cite and legal arguments they expressly advance. See id.

In this action, the Clerk of Court provided Plaintiff notice of the motion for summary judgment, the right to file affidavits or other materials in opposition, and the consequences of default. (Doc. 27.) For that reason, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985), have been satisfied.

## III. DISCUSSION

Defendant moves for summary judgment on all counts and asserts the following: (1) Plaintiff cannot establish a prima facie case of disparate treatment; (2) Defendant can articulate a legitimate nondiscriminatory and nonretaliatory reason for Plaintiff's termination; and (3) Plaintiff cannot establish a prima facie case of retaliation. (Doc. 25-1, at 8-14.) The Court addresses the claims in turn.

### A. Discrimination Under Title VII and § 1981

Plaintiff brings claims for race discrimination in violation of Title VII and Section 1981, alleging Defendant terminated her based on her race. (Doc. 1, at 6-8, 10-13.) "Section 1981 prohibits intentional race discrimination in the making and enforcement of public and private contracts, including employment contracts." Jenkins v. Nell, 26 F.4th 1243, 1249 (11th Cir. 2022) (citations omitted).[1] "A plaintiff may use either direct evidence or circumstantial evidence to show race discrimination." Id. (citation omitted). Direct evidence is "evidence which reflects a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1358 (11th Cir. 1999) (citations and quotation marks omitted). Direct

[1] "The elements of a claim of race discrimination under 42 U.S.C. § 1981 are also the same as a Title VII disparate treatment claim in the employment context." Jenkins, 26 F.4th at 1249 (citation omitted).

evidence must "prove[] the existence of discriminatory intent without inference or presumption." Jefferson v. Sewon Am., Inc., 891 F.3d 911, 921 (11th Cir. 2018) (alterations adopted and citation omitted).

Defendant argues Plaintiff presents no direct evidence of discrimination. (Doc. 25-1, at 12.) Plaintiff agrees that she relies on circumstantial evidence to prove her claim under a McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) analysis. (Doc. 28-3, at 6-7.) Thus, the Court turns to the McDonnell Douglas framework.

1. McDonnell Douglas Standard

The McDonnell Douglas framework generally governs the use of circumstantial evidence in employment discrimination cases. 411 U.S. 792. Under McDonnell Douglas, a plaintiff has the burden to establish a prima facie case of discrimination. Jenkins, 26 F.4th at 1249. To establish a prima facie case of discrimination, a plaintiff must show: "(1) [s]he belongs to a protected class; (2) [s]he suffered an adverse employment action; (3) [s]he was qualified to perform the job in question; and (4) [her] employer treated 'similarly situated' employees outside [her] class more favorably." Id. (citation omitted). If plaintiff establishes a prima facie case, "the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions." Lewis v. City of Union City, 918 F.3d 1213, 1221 (11th Cir. 2019) (citing

Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). If defendant carries its burden, "plaintiff must then demonstrate that the defendant's proffered reason was merely a pretext for unlawful discrimination, an obligation that 'merges with the plaintiff's ultimate burden of persuading the factfinder that she has been the victim of intentional discrimination.'" Id. (quoting Burdine, 450 U.S. at 256 (alterations adopted)).

Defendant argues Plaintiff cannot establish a prima facie case of discrimination, but it does not dispute that Plaintiff was a member of a protected class, qualified for the position, and subject to an adverse employment action. (Doc. 25-1, at 8-11.) Further, Defendant argues it had a legitimate, nondiscriminatory reason for terminating Plaintiff's employment, and she cannot show pretext. (Id. at 11-12.)

*a. Prima Facie Case*

Defendant argues Plaintiff cannot show Defendant treated similarly situated workers outside her race more favorably regarding her termination for violating the Policy. (Id. at 9-11.) As such, the Court considers the other three elements satisfied.

The Eleventh Circuit is clear that "[f]ederal courts do not sit as a super-personnel department that reexamines an entity's business decision." Lewis v. Ga. Power Co., No. 22-11395, 2023 WL

1818924, at *3 (11th Cir. Feb. 8, 2023) (quoting Chapman v. Al Transp., 229 F.3d 1012, 1030 (11th Cir. 2000)).

> Instead, to determine whether a comparator was treated more favorably, courts in this circuit examine the material differences between the plaintiff and comparator's treatment that are capable of evaluation by a court without personnel or industry expertise - such as whether they were both cited for misconduct, investigated, reprimanded, terminated, and provided the same opportunities at severance.

Whiteside v. PCC Airfoils LLC, No. 5:21-CV-62, 2023 WL 2787977, at *5 (S.D. Ga. Apr. 5, 2023) (citations omitted). "The Eleventh Circuit has indicated that even where employees violate the same policy, different circumstances surrounding the violation can invalidate a comparator." Barnes v. 3M Co., No. 6:22-CV-01543, 2025 WL 794453, at *6 (N.D. Ala. Mar. 12, 2025) (citing Jenkins, 26 F.4th at 1248, 1250.)

Plaintiff argues the disciplinary outcome imposed on her by the same decisionmakers was harsher than the discipline given to similarly situated Caucasian employees. (Doc. 28-3, at 8-11.) Plaintiff identifies as comparators Kerry Damni, a Caucasian "coworker" that kicked a drink in Plaintiff's hand; Joe Jeffries, a Caucasian nurse that "engaged in two separate incidents involving profanity"; and Justin Garnell, a Caucasian Charge Nurse, who was involved in Plaintiff's March 1, 2024 incident. (Id. at 3-4, 8-11.)

Defendant argues the named employees are improper comparators because: (1) Damni "did not behave in a hostile manner" when she "kicked a drink out of Plaintiff's hand while bantering" and then apologized; (2) Jeffries' first incident using profanity when a colleague died contained different circumstances which render an unsuitable comparison and the second incident's report showed no use of profanity; and (3) Plaintiff failed to provide evidence that Garnell used profanity during the March 1, 2024 incident or that he had similar employment or disciplinary histories to Plaintiff. (Doc. 35, at 8-10.)

The Court finds Plaintiff fails to identify a similarly situated employee who was treated more favorably. Plaintiff must "identify a specific comparator for the fourth element - not conclusory statements that she was treated differently than members outside of her protected class." McKenzie v. S. Nuclear Operating Co., No. CV 120-157, 2023 WL 2403778, at *5 (S.D. Ga. Mar. 8, 2023) (citations and quotation marks omitted).

First, Plaintiff identifies only one comparator with the same job title and duties as her, Jeffries. (Doc. 28-1, at 5.) Plaintiff does not indicate what position Damni held, only that she was a Caucasian coworker, and Garnell was identified as a Charge Nurse. (Id. at 2-3.) "[A] plaintiff and her comparators must be sufficiently similar, in an objective sense, that they 'cannot reasonably be distinguished.'" Lewis, 918 F.3d at 1228

(citing Young v. United Parcel Serv., Inc., 575 U.S. 206, 231 (2015)). Plaintiff also fails to show that any of the comparators had similar employment or disciplinary histories to her. Plaintiff was coached multiple times on behavioral issues, notably over an interaction with management and a patient communication issue. (Doc. 26-1, at 124.) Only Jeffries was involved in more than one instance of misconduct. (Id. at 148-49.)

Further, even if the comparators were similarly situated to Plaintiff in terms of job title, employment and disciplinary history, there are important contextual differences between Plaintiff's conduct and that of her coworkers. As stated above, "different circumstances surrounding the violation can invalidate a comparator," even if the same policy was violated. Barnes, 2025 WL 794453, at *6 (citation omitted). During the March 1, 2024 incident, Plaintiff was "shooed" away by Garnell, so she got upset and walked away. (Doc. 26-1, at 20.) Plaintiff admits she later returned to Garnell and "raised her voice and used profane language and gestures, including showing the middle finger." (Doc. 28-1, at 4.) She also said, "I don't care, I don't give a fuck, write me up." (Doc. 25-5, at 6.) Plaintiff also told a coworker, "[Garnell's] not going to help you with shit. He's not going to do anything. He's going to ignore you and sit at the desk like he always does because he's not a helpful [Charge Nurse]." (Doc. 26-1, at 20.) Plaintiff contends Garnell also used profanity during

the interaction, but multiple witnesses only referenced Plaintiff's profanity in their March 5, 2024 interviews with HR. (Id. at 21; Doc. 26-2, at 15.) Garnell was not suspended for the incident, and Plaintiff did not apologize for her words or actions. (Doc. 28-1, at 4-5.)

Plaintiff states another comparator, Damni, "kicked a soda bottle out of Plaintiff's hand, hitting her mouth and spilling the drink." (Id. at 2.) Plaintiff stated Damni "was making a lot of jokes," when the incident occurred, she and Damni generally had a joking relationship, and that once the drink spilled on her, Damni "tried to come back and clean it up . . . but I shoved her away," and Plaintiff reported the incident to a supervisor. (Doc. 26-1, at 9.) Damni apologized to Plaintiff and received a verbal warning. (Doc. 28-1, at 2.)

Lastly, Plaintiff asserts Jeffries used profanity in violation of the Policy in two incidents. (Id. at 5.) During the first incident on March 22, 2023, Jeffries used profanity in front of staff members while providing postmortem care for a staff nurse coworker that had passed away during his shift. (Doc. 26-1, at 18.) Jeffries told a nurse to "[r]ead the fucking room," when they tried to ask another nurse an unrelated question. (Id. at 148.) Jeffries was "traumatized by the event," and he later apologized to staff and management. (Id. at 18; Doc. 25-4, at 2-3.) As a result, Jeffries received a written warning. (Doc. 26-

1, at 148.) As for the second incident on October 1, 2023, Jeffries was "very rude" to a lab technician when she could not report the result of a blood sample he had collected, telling her he "knew what a curve was" and commanding her to release the lab results. (Id. at 149.) Jeffries received a one-day suspension and the incident report indicated, "[i]f behavior does not improve, [Jeffries] is at risk for further disciplinary action and/or termination." (Id.; Doc. 28-1, at 5.) The disciplinary form from the second incident does not indicate he used profanity. (Doc. 26-1, at 149.)

Plaintiff admitted to her use of profanity and obscene gestures, which Defendant asserts occurred in front of patients' families and other staff. (Doc. 28-1, at 4; Doc. 25-1, at 2.) She did not apologize. (Doc. 28-1, at 4; Doc. 34, at 3.) She was also coached for behavior issues multiple times and given a verbal warning because she violated Defendant's attendance policy four times. (Doc. 25-5, at 2; Doc. 26-1, at 119, 124.) Plaintiff does not detail the comparators' disciplinary history other than Jeffries, nor whether the identified comparators received coachings related to their incidents. Regardless, the Court finds there is insufficient evidence the comparators were similarly situated to Plaintiff or treated more favorably under the circumstances. The different contexts of the incidents and lack of former disciplinary problems show why Damni, Jeffries, and

Garnell are improper comparators. Damni's actions occurred in a joking context, she immediately tried to clean up the spill, and she ultimately apologized. (Doc. 26-1, at 9.) Jeffries used profanity in one instance in which a coworker passed away during his shift, and he also apologized. (Id. at 18.) Garnell was responding to Plaintiff's outburst, and multiple witnesses did not state he used profanity during the interaction. (Doc. 26-2, at 15.)

As detailed above, Plaintiff cannot point to another similarly situated employee outside of her protected class that was treated more favorably, so Plaintiff fails to provide evidence to support the fourth element of a prima facie case for race discrimination. Because Plaintiff does not establish a prima facie case, the Court now examines the convincing mosaic inquiry.

*b. Convincing Mosaic Standard*

"If the plaintiff cannot establish a prima facie case, she does not automatically lose on summary judgment." Ismael v. Roundtree, 161 F.4th 752, 764 (11th Cir. 2025) (citation omitted). "Rather than lose by default, the consequence is that the plaintiff must produce enough evidence, on her own and without any helpful evidentiary burdens or presumptions, to demonstrate a material issue of triable fact. A court, therefore, should advance directly to the convincing mosaic inquiry." Id. at 765.

Under the convincing mosaic standard, "the court must proceed to ask whether the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." Id. at 764 (citation and quotations omitted). In making such a determination, the Eleventh Circuit has identified three nonexclusive categories of evidence that may allow a plaintiff to avoid summary judgment: "suspicious timing, ambiguous statements . . ., and other bits and pieces from which an inference of discriminatory intent might be drawn," "systematically better treatment of similarly situated employees"; or evidence "that the employer's justification is pretextual." Id. at 760 (citation omitted). "But inferences in favor of [an employee] can be based only on evidence - not on speculation." Martin v. Fin. Asset Mgmt. Sys., Inc., 959 F.3d 1048, 1058 (11th Cir. 2020).

Utilizing the convincing mosaic standard, the Court finds Plaintiff has not produced evidence to demonstrate a material issue of triable fact as to intentional discrimination by the decisionmakers. Ismael, 161 F.4th at 765. As detailed above, there was no evidence of systemically better treatment of similarly situated employees. As to suspicious timing, Plaintiff states she reiterated her racial discrimination complaint in February 2024 but provides no evidence in support. (Doc. 28-1, at 3; Doc. 34,

at 2.) The Court also finds there were no ambiguous statements made about Plaintiff, but her disciplinary history, coachings, and reports from management were well-documented. (Doc. 26-1, at 119-22, 124, 150-53.)

The Court also finds Plaintiff fails to provide evidence that Defendant's reason for termination was pretextual. To show pretext, a plaintiff must show "*both* that the [employer's] reason was false, *and* that discrimination was the real reason" for the adverse action. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993). Conclusory allegations of discrimination are not enough to overcome "extensive evidence of legitimate, non-discriminatory reasons for [an employer's] actions." Mayfield v. Patterson Pump Co., 101 F.3d 1371, 1376 (11th Cir. 1996) (citation omitted). Based on the evidence of Plaintiff's disciplinary history, she has failed to show pretext. Although the Eleventh Circuit's three categories are non-exhaustive, the Court is satisfied that the record does not present a convincing mosaic of circumstantial evidence in which a jury could infer intentional discrimination by the decisionmakers. Ismael, 161 F.4th at 760.

Based on the above, Defendant's motion for summary judgment as to Plaintiff's discrimination claims is **GRANTED**.

**B. Retaliation Under Title VII and § 1981**

Plaintiff claims she engaged in protected activity before Defendant ultimately terminated her employment in retaliation.

(Doc. 28-3, at 12.) Plaintiff argues there is no formal policy that restricts multiple nurses from going to lunch together and other Caucasian nurses went to lunch in groups of three or more without being stopped. (Id. at 12-13; Doc. 28-1, at 3, 5.) Thus, Plaintiff argues the asserted reason for her termination was discriminatory and retaliatory based on her race. (Doc. 28-3, at 10-20.)

Defendant argues Plaintiff cannot establish a prima facie case of retaliation or otherwise offer sufficient evidence to create a genuine issue of material fact by showing pretext. (Doc. 25-1, at 12-14.) Defendant also argues it had a legitimate, non-discriminatory reason to terminate Plaintiff's employment. (Id. at 13.)

1. McDonnell Douglas Standard

The Court analyzes Plaintiff's retaliation claim under the McDonnell Douglas standard.

*a. Prima Facie Case*

"A plaintiff establishes a prima facie case of retaliation by showing that: (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse action; and (3) there was a causal connection between the protected activity and the adverse action." Chapter 7 Tr. v. Gate Gourmet, Inc., 683 F.3d 1249, 1258 (11th Cir. 2012) (internal quotations and citation omitted). Defendant argues Plaintiff has not established a prima facie case

because she has not satisfied the third element. (Doc. 25-1, at 12-13.)

"To establish a causal connection, a plaintiff must show that the relevant decisionmaker was aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated." Patterson v. Ga. Pac., LLC, 38 F.4th 1336, 1351 (11th Cir. 2022) (citation omitted).

> The burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action. But mere temporal proximity, without more, must be very close. A three to four month disparity between the statutorily protected expression and the adverse employment action is not enough. Thus, in the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law.

Thomas v. Cooper Lighting, Inc., 506 F.3d. 1361, 1364 (11th Cir. 2007) (citations and internal quotation marks omitted). Finally, "[a] plaintiff making a Title VII [or § 1981] retaliation claim must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer."[2] Smith v. City of Fort Pierce, 565 F. App'x 774, 778 (11th Cir. 2014) (citation and internal quotation marks omitted). "Although contesting an unlawful employment practice is protected conduct, the anti-discrimination statutes do not insulate an employee from

[2] "Retaliation claims are also cognizable under 42 U.S.C. § 1981 and are analyzed under the same framework as Title VII claims." Gogel v. Kia Motors Mfg. of Ga., Inc., 967 F.3d 1121, 1134 (11th Cir. 2020) (citations omitted).

discipline for violating the employer's rules or disrupting the workplace." Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir. 1999) (citations omitted). Thus, "an intervening act of misconduct" can "diminish[] any inference of causation." Henderson v. FedEx Express, 442 F. App'x 502, 507 (11th Cir. 2011) (citation omitted).

Defendant argues Plaintiff does not present evidence that her complaints of racial discrimination and termination were causally connected. (Doc. 25-1, at 12-14.) First, Defendant argues Plaintiff cannot establish a causal connection through temporal proximity alone as three and a half months passed between Plaintiff's complaint and her termination. (Id. at 12-13.) Second, Defendant argues Plaintiff's intervening misconduct was a "superseding cause" that "broke any chain of causation" between her protected activity and termination. (Id. at 13 (citing Henderson, 442 F. App'x at 504).) Plaintiff argues temporal proximity is established, as there is a one-month period between her protected activity and termination.[3] (Doc. 28-3, at 13-14.) Plaintiff also argues the termination investigation was improper because her explanations and complaints of discrimination were disregarded throughout. (Id. at 16.) Lastly, Plaintiff argues

[3] As stated above, the Court finds there is no evidence Plaintiff renewed her complaint to management in February 2024. Based on this, the Court relies on Plaintiff's deposition testimony that she complained to Crocker and HR of discrimination in November 2023. (Doc. 26-1, at 23.)

Defendant's motive was to create a narrative of poor behavior because management did not address her protected complaint, instead choosing to focus on her behavior, and thus the stated reasons for termination are pretextual. (Id. at 15-17.)

The Court finds Plaintiff has established no causal connection between her protected activity and her termination. First, Plaintiff argues temporal proximity yet offers no evidence to support the reiteration of her racial discrimination complaint in February 2024. (Doc. 28-1, at 3; Doc. 28-3, at 14.) Plaintiff's complaints of racial discrimination in November 2023 and her termination on March 8, 2024, occurred over three months apart, which fails to support causation. (Doc. 28-1, at 3; Doc. 35, at 11); see Drago v. Jenne, 453 F.3d 1301, 1308 (11th Cir. 2006) (finding a three-month proximity between the protected conduct and the adverse action does not create a jury issue about the causal connection between them).

Second, Defendant clearly states the reason for Plaintiff's termination was her violation of the Policy. (Doc. 25-5, at 6-7; Doc. 35, at 11-12.) Plaintiff admits she violated the Policy on March 1, 2024, so the Court finds it was an intervening act of misconduct and a cause for termination. (Doc. 28-1, at 4); Berry v. Crestwood Healthcare LP, 84 F.4th 1300, 1309 (11th Cir. 2023) (finding a defendant's "intervening discovery of misconduct undercuts the inference that [Plaintiff's] complaints caused her

termination"). The Court finds Plaintiff failed to present evidence of a causal connection between her November 2023 complaint and her March 2024 termination; thus, she has not established a prima facie case of retaliation.

*b. Convincing Mosaic Standard*

As detailed above, Plaintiff's failure to establish a prima face case does not end the summary judgment analysis. The Court now considers whether the record creates a convincing mosaic of circumstantial evidence for the retaliatory intent of the decisionmakers. Ismael, 161 F.4th at 760.

In the context of Title VII and Section 1981 retaliation claims, the Eleventh Circuit held that under the convincing mosaic standard, "an employee may prove retaliation with any circumstantial evidence that creates a reasonable inference of retaliatory intent." Berry, 84 F.4th at 1310. "As in other contexts, a plaintiff may avoid summary judgment by presenting a wide range of circumstantial evidence." Ismael, 161 F.4th at 760. As discussed above, the same three categories of evidence may give rise to an inference of unlawful retaliation: "evidence of suspicious timing, ambiguous statements, or other information from which unlawful intent can be inferred; evidence of systematically better treatment of similarly situated employees; or evidence that the employer's justification for its action is pretextual." Berry, 84 F.4th at 1311 (citation omitted). Plaintiff argues that

Defendant should not prevail on its motion for summary judgment because, when viewed as a whole, "Defendant's inconsistent enforcement of its [Policy], failure to credit Plaintiff's explanation, selective investigation, and reliance on disputed facts" support finding that Defendant's reason for termination was pretext for retaliation. (Doc. 28-3, at 21.)

The Court concludes Plaintiff fails to present convincing circumstantial evidence to support her retaliation claim. First, it is undisputed that Defendant addressed Plaintiff's November 2023 concerns in a December 15, 2023 meeting with Ansley, Stallings, and Crocker, in which Plaintiff expressed her satisfaction with the resolution. (Doc. 25-5, at 4-5; Doc. 28-2, at 6-7.) Second, as to suspicious timing, Plaintiff offers no evidence that she renewed her racial discrimination complaint in February 2024. (Doc. 28-1, at 3.) Third, as detailed above, Plaintiff's allegations of Defendant's inconsistent application of the Policy and improper manner of investigation fail to support a pretextual reason for termination. The Court has already found there was no evidence of systemically better treatment of similarly situated employees, and Plaintiff's supervisors made it clear through the incident report that her behavior during the March 1, 2024 incident was the reason for her termination. (Doc. 26-1, at 153.) The Court also finds no ambiguous statements were made as to Plaintiff's complaint or the March 1, 2024 incident. Given the

above, Plaintiff fails to establish a convincing mosaic of circumstantial evidence in which a jury could infer intentional retaliation, so Defendant's motion for summary judgment as to Plaintiff's retaliation claim is **GRANTED.**

## IV. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Defendant's motion for summary judgment (Doc. 25) is **GRANTED.** The Clerk is **DIRECTED** to **ENTER JUDGMENT** in favor of Defendant, **TERMINATE** all pending motions and deadlines, and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this 9th day of September, 2026.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA